IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELA BIESECKER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 21-649 |
| | : | |
| v. | : | |
| | : | |
| PA ATTORNEYS GENERAL; PA MEDICAL FRAUD UNIT; PA DEPARTMENT HUMAN SERVICES; CEREBRAL PALSY OF CHESTER COUNTY; BERKS COUNTY PUBLIC DEFENDER; CHRISTIAN SONDERGAARD; ELIZABETH MADIGAN; and BERKS COUNTY COMMON PLEAS COURT, PRESIDENT JUDGE PARISI, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                                                          May 28, 2021

The *pro se* plaintiff has sought leave to proceed *in forma pauperis* in this action brought under 42 U.S.C. § 1983. The plaintiff asserts that her due process rights were violated during state court criminal proceedings where she was convicted of Medicaid Fraud. She also asserts that she was subjected to a malicious prosecution.

Although the court will grant the plaintiff leave to proceed *in forma pauperis*, the court must dismiss the complaint because she has failed to state a claim for relief against any named defendant.

**I.     ALLEGATIONS AND PROCEDURAL HISTORY**

On February 10, 2021, the *pro se* plaintiff, Angela Biesecker ("Biesecker"), filed an application for leave to proceed *in forma pauperis* (the "IFP Application") and a complaint. Doc. Nos. 1, 2. In the complaint, Biesecker names as defendants the Pennsylvania Attorney General,

the Pennsylvania Department of Human Services ("DHS"), the Pennsylvania Medical Fraud Unit ("MFU"), Cerebral Palsy of Chester County, the Berks County Public Defender, Christian Sondergaard (a Berks County Assistant District Attorney), Elizabeth Madigan (an Assistant Pennsylvania Attorney General), and President Judge Parisi of the Berks County Court of Common Pleas. *See id.* at ECF pp. 2–4.

As for the allegations in the complaint, it is noticeably short on facts. Nonetheless, it appears that at some point, Biesecker became a caregiver for her son, Evan, under the Medicaid Home and Community Based Services Waiver program authorized by section 1915(c) of the Social Security Act. *See* Doc. No. 2-1 at ECF p. 6, ¶ 10, p. 35, ¶ 82.[1] Apparently, the DHS and the State Medicaid Agency Bureau of Program Integrity discovered some irregularity in her provision of care (or requests for payments) and turned her in to the Pennsylvania Attorney General's Office because of alleged Medicaid Fraud. *See id.* at ECF p. 34, ¶ 75; Compl. at ECF p. 5. Biesecker claims that the DHS and Bureau of Program Integrity "neglected all statutory requirements of [section] 1915(c) of the [Social Security] Act," when they turned her in to the Attorney General's Office. Compl. at ECF p. 5. In this regard, it appears that Biesecker asserts that she was denied a fair hearing and appeal under the administrative process when she did not receive notice, remediation, or a fair hearing. *See* Doc. No. 2-1 at ECF p. 34, ¶ 75, p. 35, ¶ 82, p. 37, ¶ 88; *see also id.* at pp. 28–29, ¶ 57 (framing issue in case as "whether Angela Biesecker was denied Remediation, Corrective Action and the Right for Administrative Procedures of 1915(C) OBRA Waiver. Unless the OBRA Waiver explicitly forbids provision of Corrective Action the answer must be 'yes'").

---

[1] Along with the complaint, Biesecker submitted an additional 39-page document which she titled "Summary of Laws." Doc. No. 2-1 This document contains 102 numbered paragraphs that overwhelmingly reference the Social Security Act, Medicaid, and related statutes and regulations. *See id.* There appear, however, to be some random references to the underlying case that provide additional information about her allegations. The court has attempted to extract those scant factual references in compiling the factual allegations in this case.

After Biesecker's case made it to the Pennsylvania Attorney General's Office, the Attorney General and the Medicaid Fraud Unit charged and prosecuted her for Medicaid Fraud under the Social Security Act. Compl. at ECF p. 5. They prosecuted her in the Court of Common Pleas of Berks County, which Biesecker claims was the wrong jurisdiction. *Id.* She was found guilty of Medicaid Fraud and, thereafter, her son was indefinitely excluded from receiving Medicaid benefits. *Id.* at 5–6; Doc. No. 2-1 at ECF p. 31, ¶ 63, p. 34, ¶ 76, p. 39.

Biesecker asserts that during the criminal proceedings, she was deprived of her Fifth and Fourteenth Amendment due process rights. *Id.* at ECF p. 5. She also alleges that the Pennsylvania Attorney General's Office "den[ied] and neglect[ed] . . . [her] civil rights." *Id.* at ECF p. 6. She claims that she was maliciously prosecuted. *Id.* She also states that she "was wrongly convicted" and wants "to be exonerated" and have her "record cleared." Doc. No. 2-1 at ECF p. 39. She "ask[s] the Court to compel PA DHS and the PA OAG to exonerate and remove [her] from indefinite exclusion." Compl. at ECF p. 6.

In addition to the foregoing, the court notes that Biesecker appealed from her conviction and sentence of five years' probation to the Superior Court of Pennsylvania, which affirmed her judgment of sentence in April 2017. *See Commonwealth v. Biesecker*, 161 A.3d 321 (Pa. Super. 2017).[2] The publicly available docket entries for the underlying criminal case show that Biesecker thereafter unsuccessfully sought post-conviction collateral relief in the Court of Common Pleas. *See* Docket, *Commonwealth v. Biesecker*, No. CP-06-CR-3502-2013 (Berks Cnty. Ct. Com. Pl.), *available at* https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-06-CR-0003502-2013&dnh=hTc3EFFByl1YVgXWpywFkg%3D%3D ("Docket"). She appealed from the denial of post-conviction collateral relief to the Superior Court, which affirmed the decision.

---

[2] This published decision provides more facts about the underlying Medicaid Fraud. *See Biesecker*, 161 A.3d at 324–26.

*Id.* Biesecker then filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which denied the petition on May 27, 2020. *Id.* Although the docket reflects that proceedings relating to her probation are ongoing in the Court of Common Pleas, her Medicaid Fraud conviction remains intact. *Id.*

## II. DISCUSSION

### A. The IFP Application

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (per curiam) (footnote omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must]

4

review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application, it appears that Biesecker is unable to pay the costs of suit. Therefore, the court will grant her leave to proceed *in forma pauperis*.

### B. <u>Standard of Review – Screening Under 28 U.S.C. § 1915(e)</u>

Because the court has granted Biesecker leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

5

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted). In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Higgs v. Attorney Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).

### C. <u>Analysis</u>

Although not specifically identified in the complaint, Biesecker appears to be seeking relief under 42 U.S.C. § 1983. This statute provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and

must show that the alleged deprivation was committed by a person acting under color of state law.").

Read liberally, Biesecker's complaint alleges that the defendants violated her rights in the course of the underlying criminal proceedings against her. She asks that this court exonerate her and order the resumption of her son's disability services. However, because (1) her claims are not cognizable in a section 1983 action and (2) the named defendants are not amenable to suit or are not state actors, the court must dismiss the section 1983 claims in this case.

### 1. Fifth Amendment Claim

Biesecker alleges that her Fifth Amendment rights were violated during the course of her underlying criminal proceedings. However, Biesecker cannot state a claim based on a violation of her Fifth Amendment rights because "the Fifth Amendment applies to actions of the federal government." *See B&G Constr. Co., Inc. v. Director, Office of Workers' Compensation Prog.*, 662 F.3d 233, 246 n.14 (3d Cir. 2011) (explaining difference between due process claims under Fifth and Fourteenth Amendments). Because there are no allegations that any of the defendants are federal actors, Biesecker cannot state a plausible Fifth Amendment claim.

### 2. Biesecker's Request that the Court Vacate Her Conviction

To the extent that Biesecker is asking this court to vacate her conviction, her request is not cognizable in a civil rights action; instead, she must pursue such relief by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254. *See generally Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

Furthermore,

> to recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)). "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487.

Here, Biesecker seeks exoneration and an order requiring that he son's disability services be reinstated, based on her claim that her rights were violated in the course of the underlying criminal proceedings. A judgment in her favor would necessarily imply the invalidity of her conviction. Because her conviction has not been invalidated, Biesecker cannot pursue this claim at this time, and the court must dismiss the claim without prejudice to her raising it at a later time, if her conviction is invalidated.

### 3. Claims Barred by Immunity

#### a. Judicial Immunity

Biesecker includes Berks County President Judge Parisi as a defendant, but she does not include in the complaint any allegations of fact identifying the basis of her claim against him. The court notes that the publicly available docket in Biesecker's underlying state court criminal case reflects that Judge Parisi presided over her trial. Presumably, Biesecker's claim arises from Judge Parisi's conduct as the presiding judge during those proceedings. She cannot maintain such a claim.

Judges are absolutely immune from liability in civil actions, including section 1983 actions, for their judicial acts. *Dennis v. Sparks,* 449 U.S. 24, 27 (1980). "Judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

There are only two circumstances in which a plaintiff can overcome judicial immunity: "First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11–12 (citations omitted). With regard to the first exception, an act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). As for the second exception, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes." *Figueroa v. Blackburn*, 208 F.3d 435, 443–44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1112 (6th Cir. 1997)). In determining whether judicial immunity applies, the court "must decide whether the Complaint set forth allegations that, taken as true, establish that the application of an exception to the doctrine of absolute judicial immunity is above the speculative level." *Kirkland v. DiLeo*, 581 F. App'x 111, 114–15 (3d Cir. 2014) (citing *Twombly*, 550 U.S. at 555).

Here, there is no suggestion that Judge Parisi was acting in the complete absence of all jurisdiction. Because pending over a trial and related matters are functions normally performed by a judge, the court must dismiss Biesecker's claim based on this conduct with prejudice under section 1915(e) because Judge Parisi is absolutely immune from suit.

### b. Prosecutors/District Attorneys

Biesecker identifies Elizabeth Madigan as a defendant. According to the underlying state court docket, Elizabeth Madigan was associated with the Pennsylvania Office of Attorney General, the prosecuting authority in the underlying criminal proceedings. *See* Docket. Biesecker also names Christian Sondergaard, who, according to the state court docket, appeared on behalf of the Commonwealth of Pennsylvania in the underlying criminal proceedings. *See id.*

Biesecker does not include any factual allegations describing how these individuals participated in the alleged violation of her constitutional rights. Based on the publicly available docket, the court presumes that the claims arise from their participation in the state court criminal proceedings. Prosecutors, however, are entitled to absolute immunity from liability under section 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). Moreover, district attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348–49 (2009).

In addition, state law affords absolute immunity to prosecutors for tort claims like malicious prosecution alleged here that are based on actions taken in the prosecutor's official capacity. *See Durham v. McElynn*, 772 A.2d 68, 69–70 (Pa. 2001) (holding that assistant district attorneys are entitled to absolute immunity from liability for actions taken in their official capacities). Biesecker does not allege that these defendants acted outside the scope of her criminal

proceedings and, therefore, they are entitled to absolute immunity and the court will dismiss the claims against them with prejudice.

          c.      Pennsylvania Office of Attorney General, DHS, and MFU

Biesecker also names the Pennsylvania Office of Attorney General, DHS, and MFU as defendants in the complaint. She may not assert any claims against them under section 1983 because states and their agencies are not "persons" for section 1983 purposes and, as such, are not amenable to suit. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989). Therefore, the court will dismiss these claims as well.

          **4.**      **Claims Against the Non-State Actor Defendants**

          a.      Public Defender

Biesecker has named the Berks County Public Defender as a defendant in the complaint, but also has not included any factual allegations describing how that office participated in the alleged violation of her constitutional rights. Even if she had done so, her federal claims against that office are not plausible. In this regard, "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (footnote omitted). Public defender's offices have been treated similarly in this context. *See Dorn v. Aguilar*, 645 F. App'x 114, 115 (3d Cir. 2016) (per curiam) ("As explained by the District Court, Dorn did not state a claim for relief against his public defender and the public defender's office because neither is a state actor for purposes of § 1983."); *see also Gannaway v. PrimeCare Med., Inc.*, 652 F. App'x 91, 95 (3d Cir. 2016) (per curiam) ("We also conclude that the District Court properly granted summary judgment to the defendants on Gannaway's claims against the Berks County Public Defender's Office and the appointed lawyers who represented him in criminal proceedings" (citing *Polk*)). Therefore,

Biesecker's section 1983 claim against the Berks County Public Defender is dismissed as not plausible.

                b.        Cerebral Palsy of Chester County

Biesecker has also included Cerebral Palsy of Chester County as the final named defendant, but as with a few of the other named defendants, she does include any factual allegations describing how that office participated in the alleged violation of her constitutional rights.[3] This social services office is not alleged to be a state actor and, accordingly, Biesecker cannot state a plausible section 1983 claim against it and the court must dismiss the claim.

### III.    CONCLUSION

For the reasons stated above, the court will grant Biesecker's IFP Application and dismiss her federal civil rights claims with prejudice, except for the claims barred by *Heck*, which will be dismissed without prejudice should her conviction ever be invalidated. In addition, the dismissal of her civil rights claims is without prejudice to her pursuit of a challenge to her conviction in habeas corpus proceedings. The court will not grant her leave to amend because any amendment against the named defendants would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002) ("[P]laintiffs whose complaints fails to state a cause of action are entitled to amend their complaint unless doing so would be inequitable or futile.").

The court will enter a separate order.

                                              BY THE COURT:

                                              /s/ *Edward G. Smith*
                                              EDWARD G. SMITH, J.

---

[3] The court understands Biesecker to be asserting a claim against the Cerebral Palsy Association of Chester County, Inc.